UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TESFAY GEBREMDHIM HAGOS,<br><br>Petitioner,<br><br>v.<br><br>KRISTI NOEM; PAMELA JO BONDI; TODD M. LYONS; JESUS ROCHA; and CHRISTOPHER LAROSE,<br><br>Respondents. | Case No.: 3:26-cv-150-JES-DEB<br><br>**ORDER:**<br><br>**(1) GRANTING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241; and**<br><br>**(2) DENYING AS MOOT MOTION FOR TEMPORARY RESTRAINING ORDER**<br><br>**[ECF Nos. 1, 2]** |

Before the Court is Petitioner Tesfay Gebremdhim Hagos' ("Petitioner") Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. ECF No. 1. Petitioner concurrently filed a Motion for Temporary Restraining Order ("TRO"). ECF No. 2. Pursuant to the Court's order to show cause (ECF No. 3), Respondents filed a return to the petition and Petitioner filed a traverse. ECF Nos. 5, 6. For the reasons set forth below, the Court **GRANTS** the petition and **DENIES AS MOOT** the TRO.

## I.   BACKGROUND

Petitioner, a native of Eritrea, alleges that he came to the United States around May 13, 2010 in order to seek asylum. ECF No. 1 at 2. He was determined to be inadmissible

1  and placed into removal proceedings under 8 U.S.C. § 1225(b). ECF No. 5-2 at 7. On June
2  24, 2010, an immigration judge ("IJ") issued an order denying his asylum claim. *Id.* at 10.
3  Three months later, on September 29, 2010, Petitioner was released on an Order of
4  Supervision ("OSUP"). *Id.* at 12.

5  Plaintiff alleges that while he was on supervision, he always reported to Immigration
6  and Customs Enforcement ("ICE") as required, never got any criminal convictions, and
7  obeyed his other release conditions. ECF No. 1-2 ¶ 3. Since, he has lived in the United
8  States, he has married, and has two young children. *Id.* ¶ 11.

9  On November 13, 2025, Petitioner reported to ICE for a scheduled check-in pursuant
10 to his OSUP. *Id.* ¶ 4. Petitioner was detained at that check-in. *Id.* Petitioner alleges that he
11 was not given any paperwork when he was detained. *Id.* ¶¶ 4-6. He alleges that when he
12 asked why he was being detained, he was told that there was a new administration and
13 things were changing. *Id.* ¶ 4. However, in their response, Respondents included a Warrant
14 for Arrest of Alien dated November 13, 2025, and a Notice of Revocation of Release, dated
15 the same day. ECF No. 5-2 at 14, 16. The Notice of Revocation appears to have been signed
16 and dated by the detainee. *Id.* at 16. Respondents also included a document titled "Alien
17 Informal Interview," stating that an interview was conducted the same day on November
18 13, 2025. *Id.* at 19.

19 In his Petition, Petitioner asserts three claims: (1) that Respondents violated Due
20 Process under the Fifth Amendment and the Administrative Procedures Act by failing to
21 comply with its own regulations (ECF No. 1 at 7-9); (2) that his detention has been so
22 prolonged to date that it violates the due process standard set in *Zadvydas v. Davis*, 533
23 U.S. 678 (2001) (*id.* at 9-13); and (3) that ICE cannot remove Petitioner to another country
24 without adequate notice and an opportunity to be heard (*id.* at 13-17).

25 ## II.  LEGAL STANDARD

26 A writ of habeas corpus is "available to every individual detained within the United
27 States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).
28 "The essence of habeas corpus is an attack by a person in custody upon the legality of that

custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, challenges to immigration-related detention are within the purview of a district court's habeas jurisdiction. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

### III.   DISCUSSION

Respondents make several arguments in response to the petition: (1) there is no live case or controversy regarding third-country removal because they are only seeking to remove Petitioner to Eritrea; (2) this Court lacks jurisdiction over this case under 8 U.S.C. § 1252; (3) Petitioner's re-detention is lawful under 8 U.S.C. § 1231(a) and his detention has not become prolonged under *Zadvydas*; and (4) ICE complied with its regulations when re-detaining Petitioner. ECF No. 5.

#### A.   Jurisdiction

As a threshold matter, Respondents argue that Petitioner's claims are all jurisdictionally barred by 8 U.S.C. § 1252. ECF No. 5 at 5-6. The Court has considered and rejected this argument in its previous orders, and adopts its reasoning here. *See, e.g.*, *Sanchez v. LaRose*, No. 25-CV-2396-JES-MMP, 2025 WL 2770629, at *2 (S.D. Cal. Sept. 26, 2025); *Van Tran v. Noem*, No. 25-CV-2334-JES-MSB, 2025 WL 2770623, at *2 (S.D. Cal. Sept. 29, 2025); *Rios v. U.S. Dep't of Homeland Sec.*, No. 3:25-CV-01796-JES-DEB, 2025 WL 3022854, at *1 (S.D. Cal. Oct. 29, 2025). Thus, the Court concludes that it has jurisdiction to hear Petitioner's claims on the merits.

#### B.   Revocation of Petitioner's OSUP

"The Due Process Clause of the Fifth Amendment prohibits the Government from depriving individuals of their life, liberty, or property, without due process of

law." *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). "[T]he Due Process Clause applies to all persons within the United States, including aliens, whether their presence is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 679. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id.* at 690. A person at risk of a suffering a serious loss being given notice and an opportunity to be heard, in a meaningful manner and at a meaningful time, is the essence of procedural due process. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

The detention and release of noncitizens that are subject to a final order of removal is governed by 8 U.S.C. § 1231. This statute provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A). "If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General." *Id*. § 1231(a)(3).

Supervised release and any revocation of such release thereafter is governed by either 8 C.F.R. § 241.4 or 8 C.F.R. § 241.13. *Diaz v. Wofford*, No. 1:25-CV-01079 JLT EPG, 2025 WL 2581575, at *4 (E.D. Cal. Sept. 5, 2025). Here, Respondents include a document titled "Notice of Revocation of Release", dated on November 13, 2025. ECF No. 5-2 at 16. In this notice, ICE states that Petitioner's re-detention is pursuant to § 241.13. *Id.* (citing 8 C.F.R. § 241.13).

The Court previously addressed what this provision requires in *Van Nguyen v. Noem*, No. 3:25-CV-3062-JES-VET, 2025 WL 3251374, at *1 (S.D. Cal. Nov. 21, 2025). For revocation of supervised released under 8 C.F.R. § 241.13(i), the Court found that this provision requires the following: (1) ICE to determine that "on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future;" (2) that the alien "will be notified of the reasons for revocation of his or her release;" and (3) after the alien's re-detention, that a prompt initial informal interview be conducted at which the alien could respond to

the reasons for revocation. *Id.* Violation of any these procedures may form the basis of a Due Process violation. *Id.* The Court adopts the full reasoning of *Van Nguyen* here.

Petitioner was provided a Notice of Revocation at the same time as his re-detention. No. 5-2 at 16. Thus, timing of the notice is not at issue. The Notice provided the following reasons:

> This letter is to inform you that your order of supervision has been revoked, and you will be detained in the custody of U.S. Immigration and Customs Enforcement (ICE) at this time. This decision was made based upon a review of your official alien file and a determination that there are changed circumstances in your case.
>
> ICE has determined that you can be expeditiously removed from the United States pursuant to an outstanding order of removal against you. ICE is now able to obtain valid travel documents for removal to Eritrea and will be working on obtaining travel documents and a removal flight to Eritrea.

*Id.* ICE then conducted an informal interview the same day. ECF No. 5-2 at 19. It stated that Petitioner did not provide a written statement or provide any documents, but that he did make an oral response. *Id.* His oral response focused on why he did not want to be detained due to his family obligations and circumstances. *Id.*

The language in the Notice is relatively conclusory. The language "ICE has determined that you can be expeditiously removed from the United States pursuant to an outstanding order of removal against you" is similar to language from other notices that courts within this Circuit have held to be not sufficient. *See, e.g.*, *McSweeney v. Warden of Otay Mesa Det. Facility*, No. 3:25-CV-02488-RBM-DEB, 2025 WL 2998376, at *5 (S.D. Cal. Oct. 24, 2025) (holding that language in notice stating that "ICE has determined that you can be expeditiously removed from the United States pursuant to an outstanding order of removal" was "conclusory and unclear" and failed to provide adequate notice of the basis of the revocation decision); *J.L.R.P., v. Wofford et al.*, No. 1:25-CV-01464-KES-SKO (HC), 2025 WL 3190589, at *7 (E.D. Cal. Nov. 14, 2025) (holding that same language in the notice of revocation of release "did not provide any specific changed circumstance applicable to petitioner"). Petitioner's Notice does include the additional

language that "ICE is now able to obtain travel documents for removal to Eritrea." ECF No. 5-2 at 16. The Court is still wary of whether this provides sufficient notice because the statement remains conclusory and no further reasons or details are provided in the Notice that substantiate the statement.

However, the Court finds that Respondents violated the other provisions of 8 C.F.R. § 241.13(i) requiring a prompt initial informal interview where the alien could respond to the reasons for revocation and that ICE sufficiently established changed circumstances that now make the likelihood of removal more likely.

### 1. Prompt Informal Interview

The regulations not only require that ICE conducts a prompt informal interview, but the regulations also provide the purpose for this requirement: "to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.13(i)(3). This purpose is essential to comport with what is required under Due Process—namely, that "the fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews*, 424 U.S. at 333 (internal citation omitted). Indeed, the regulations further elaborate that at this informal interview, "the alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(3). Then, the revocation review "will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release." *Id.*

Here, Petitioner was provided an informal interview the same day that he was re-detained. The Court previously found an interview conducted on such a timeline is a violation of this regulation because it "essentially bars the noncitizen from being able to submit any evidence or information that may show that the revocation of their release is unlawful." *Kiwana v. LaRose et al.*, No. 3:25-CV-3678-JES-SBC, 2026 WL 102661, at *6 (S.D. Cal. Jan. 14, 2026) (finding same day interview did not comport with 8 C.F.R. § 241.13(i)(3)).

The Court adopts its prior reasoning, and holds the same here. When a noncitizen is detained without any advanced notice and the interview is conducted the same day, it is difficult to see how the noncitizen can respond in a meaningful manner. And indeed, here, the notes from the informal interview reflects the results of these circumstances. Petitioner was not able to submit any written statement or documents. While he did give an oral response, it was not responsive to the reason provided in the Notice. Thus, the Court finds that the informal interview given here failed to comport with the meaningful opportunity to be heard required under 8 C.F.R. § 241.13(i)(3) and Due Process.

### 2. Changed Circumstances

8 C.F.R. § 241.13(i)(2) further requires that ICE determine that there is a "significant likelihood that the alien may be removed in the reasonably foreseeable future" and that this determination is "on account of changed circumstances." This determination must be made *before* the noncitizen's order of supervised release is revoked. *See, e.g., Nguyen v. Noem*, No. 25CV2792-LL-VET, 2025 WL 3101979, at *2 (S.D. Cal. Nov. 6, 2025); *Tran v. Noem*, No. 25-cv-2391-BTM-BLM, 2025 WL 3005347, at *2 (S.D. Cal. Oct. 27, 2025). While "[t]he plain language of the regulation . . . does not allow a court in the first instance to make the required individualized finding [of changed circumstances making removal significantly likely] . . . [t]o the extent ICE claims that it made such a determination, the court should review that claim in light of the regulations instructing ICE on how it should make such a determination." *Kong v. United States*, 62 F.4th 608, 620 (1st Cir. 2023) (citing 8 C.F.R. §§ 241.13(f), (i)(2))[1]; *Morales Sanchez v. Bondi*, No. 5:25-CV-02530-AB-DTB, 2025 WL 3651899, at *4 (C.D. Cal. Dec. 5, 2025) ("Courts do not independently

---

[1] 8 C.F.R. § 241.13(f) outlines the factors to be considered in determining whether there is a significant likelihood of removing an alien: "The HQPDU shall consider all the facts of the case including, but not limited to, the history of the alien's efforts to comply with the order of removal, the history of the Service's efforts to remove aliens to the country in question or to third countries, including the ongoing nature of the Service's efforts to remove this alien and the alien's assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question."

determine whether changed circumstances exist; rather, they review ICE's determination for compliance with the statutory and regulatory framework."); *Phan v. Beccerra*, No. 2:25-CV-01757-DC-JDP, 2025 WL 1993735, at *3 (E.D. Cal. July 16, 2025) ("[T]o the extent ICE claims that it made such a determination, the court should review that claim in light of the factors set out in 8 C.F.R. § 241.13(f).").

The Notice Petitioner was provided on the day of his re-detainment only contains the statement that "ICE is now able to obtain valid travel documents for removal to Eritrea," and provides no further explanation or support. ECF No. 5-2 at 16. Such conclusory statements make it difficult for a court to understand, let alone evaluate, how this determination was made prior to his re-detention.

In its return to the petition, Respondents include the declaration of a Deportation Officer with ICE who declares the following:

> 9. To effectuate Petitioner's removal to Eritrea, ERO must acquire a travel document and schedule a flight for Petitioner. Since Petitioner was re-detained, ERO has worked expeditiously to effectuate Petitioner's removal to Eritrea. These removal efforts remain ongoing. ERO is in the process of making a request for a Travel Document to the Eritrea embassy. ERO plans to submit the Travel Document request to the Eritrea embassy by January 19, 2026. Processing times vary, but ERO expects to obtain a Travel Document within about a month from submission of the request.
>
> 10. ICE routinely obtains travel documents for Eritrean citizens.
>
> 11. ICE has flights to Eritrea, and ICE has removed several Eritrean citizens to Eritrea as recently as December 2025.
>
> 12. I am aware of no barrier to the consulate's issuance of a travel document for Petitioner.
>
> 13. Once a travel document is issued for Petitioner, his removal can be effected promptly.

ECF No. 5-1 at ¶¶ 9-13. First, nothing in this declaration helps to clarify what ICE determined before Petitioner was actually re-detained on November 13, 2025. By its own admission, at that time, ICE had not yet begun the process of obtaining a travel document

for Petitioner. *Id.* ¶ 9; *see, e.g., Sun v. Noem*, No. 3:25-CV-02433-CAB-MMP, 2025 WL 2800037, at *2 (S.D. Cal. Sept. 30, 2025) (statements that government is "preparing" travel documents and once the travel document is received, it will begin to secure a flight are not sufficient to meet this requirement); *Huynh v. Noem*, No. 25CV3601-LL-AHG, 2026 WL 35973, at *2 (S.D. Cal. Jan. 6, 2026) (noting that government did not submit request for travel documents until weeks after re-detention and this did not suffice as evidence as "an actual determination of changed circumstances that justified the initial revocation of . . . release"); *Hoac v. Becerra*, No. 2:25-CV-01740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) ("The fact that Respondents intend to complete a travel document request for Petitioner does not make it significantly likely he will be removed in the foreseeable future."). Further, whether ICE has been removed Eritrean citizens as recently as December 2025 does not speak to the situation on or before November 13, 2025. *Id.* ¶ 11. Second, even if the Court ignores the temporal issues with the declaration, the statements still fall short of establishing changed circumstances that make removal significantly likely for Petitioner. Nothing in the declaration appears to be an individual finding for Petitioner. *See, e.g.*, *Nguyen v. Warden of Golden State Mcfarland Det. Facility*, No. 2:25-CV-03297-SKO (HC), 2026 WL 72110, at *3 (E.D. Cal. Jan. 9, 2026) ("And, to the extent that the Government advances an argument that this kind of determination may be supported by evidence showing a general change in a country's policy of accepting removable aliens on a case-by-case basis, such arguments have been repeatedly rejected."). Further, courts have rejected such similar "blanket assertion[s] of personal knowledge" where the underlying support has not also been submitted to the court. *See Rokhfirooz v. Larose*, No. 25-CV-2053-RSH-VET, 2025 WL 2646165, at *3 (S.D. Cal. Sept. 15, 2025) (declining to consider blanket statements in declaration where foundation for the statements was not provided).

In summary, the Court concludes that Respondents failed to follow their own regulations in re-detaining Petitioner by at least: (1) failing to provide him with an informal interview where he could meaningfully respond to the reasons for revocation; and (2)

failing to establish that, at the time of his re-detention, ICE determined that there was a significant likelihood that Petitioner could be removed in the reasonably foreseeable future on account of changed circumstances. Like many other district courts within this circuit, the Court finds that these failures constitute a violation of Petitioner's due process rights and justify his release. *See, e.g.*, *Kiwana*, 2026 WL 102661; *Rokhfirooz*, 2025 WL 2646165; *Huynh*, 2026 WL 35973.

Accordingly, Petitioner's habeas petition is **GRANTED** on this ground.

### C.  *Zadvydas* Claim and Third Country Removal

Having granted the petition on the ground above, the Court declines to reach the remainder of the claims in the petition, namely the *Zadvydas* argument and the third country removal argument.

### IV.  CONCLUSION

For the reasons discussed above, the Court **GRANTS** Petitioner's writ of habeas corpus. Respondents are **ORDERED** to immediately release Petitioner from custody, subject to the conditions of his preexisting Order of Supervision. Having granted the petition, the Court **DENIES AS MOOT** the motion for TRO. ECF No. 2. The Parties are **ORDERED** to file a Joint Status Report no later than **January 30, 2026**, confirming that the Petitioner has been released. The Clerk of Court is **ORDERED** to **CLOSE** this case.

**IT IS SO ORDERED.**

Dated: January 27, 2026

Honorable James E. Simmons Jr.
United States District Judge